# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CARLA LESLIE, individually & as mother and next friend of the Minor Children, C.I.F. and N.R.F.,<br><br>Plaintiff,<br><br>v.<br><br>DAVID FIELDEN, GARY FIELDEN, KAREN FIELDEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 10-CV-320-TCK-TLW<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

Before the Court is Defendant David Fielden's Motion to Disqualify Attorneys for Plaintiff ("Motion to Disqualify") (Doc. 18).

## I.  Factual Background

According to the Complaint, sometime prior to December 7, 2005, Defendant David Fielden ("David") and his father Gary Fielden ("Gary") set up a video recording device in the living room of the residence he shared with Plaintiff Carla Leslie ("Leslie") and their two children. David and Gary did so without Plaintiff or the children's consent. The device contained at least twenty-nine hours of recording, which totaled more than six "tapes" ("Recordings") (Compl. ¶ 7.) On December 7, 2005, David moved out of the residence. On December 14, 2005, represented by attorney Sharon Cole ("Cole"), David filed a Petition for Divorce in *In re the Marriage of David Dean Fielden and Carla Irene Fielden*, Tulsa County Case No. FD-2005-4837 ("State Court Proceeding"). Also according to the Complaint, David disclosed and disseminated the Recordings to Defendant Karen Fielden ("Karen"), his mother, who "transcribed some of the videos." (Compl. ¶ 11.)

On March 17, 2006, with David represented by Cole and Plaintiff appearing pro se, the state court judge conducted a hearing and entered an Agreed Decree of Divorce and Dissolution ("Decree"). After entry of the Decree, there was continuing activity in the State Court Proceeding. David filed a motion to modify the divorce decree, and a scheduling order was entered January 3, 2007. In April 2007, Leslie, represented by counsel, filed a motion to compel and strike the scheduling order. The motion was set for hearing on May 17, 2007.

On May 7, 2007, the court entered an order substituting William F. Raynolds, II ("Raynolds"), of the firm of Hood & Raynolds, for Cole as counsel for David. Attorney Ben Aycock ("Aycock"), who passed the bar in April 2007, was employed by Hood & Raynolds at this time. According to David, Raynolds assigned numerous tasks to Aycock, and Aycock provided David with substantial legal advice and representation in conjunction with the State Court Proceeding. More specifically, David contends that Aycock was aware of the Recordings and transcripts and provided David with confidential legal advice regarding the Recordings and transcripts. (David Fielden Aff., Ex. A to Mot. to Disqualify, at ¶¶ 9-11.) Citing the state court docket sheet, Leslie argued in response that Aycock actually "dealt primarily with the peripheral issues that are often spawned by child custody cases, e.g., he drafted and filed contempt pleadings . . ., he signed orders, and he appeared in court . . . ." (Resp. to Mot. to Disqualify 3.) In a supplemental affidavit attached to David's reply, David further explained Aycock's role:

> It was agreed that Benjamin Aycock would provide most of the legal services for affiant since the hourly rate charged for Mr. Aycock's legal services were less than those charged by Mr. Raynolds. Mr. Aycock provided most of the legal services for affiant. Mr. Aycock attended all meeting affiant had at Hood and Raynolds and often would be the only lawyer present at such meetings. Mr. Aycock appeared at all hearings that affiant attended and often was the only lawyer at such hearings with affiant. Mr. Aycock gave legal advice to affiant regarding the video tapes and transcripts that are involved in the present law suit. Affiant signed, under oath,

2

> responses to requests for production of documents that had been submitted by Plaintiff's lawyer in the divorce action and Mr. Aycock also signed the responses; a copy of said responses are attached hereto as Exhibit "1."[1] In the first request to the requests, affiant described the video tapes that are involved in this action. The video tapes, transcripts and special time lapse video recorder/player were delivered to the Hood and Raynolds law firm and remained there while Mr. Aycock and the law firm represented affiant. During this time as described in paragraph 12 above, the video tapes and transcripts were available for viewing by Plaintiff, Carla Leslie and her attorneys.

(David Fielden Supp. Aff., Ex. A to Reply in support of Mot. to Disqualify, at ¶¶ 5-14 (footnoted added).)

On August 13, 2008, Leslie filed a Motion for Psychological Evaluation for Custody. On September 19, 2008, the court granted Leslie's motion and designated Dan Stockley ("Stockley") as the evaluator. The court ordered Leslie to pay all of Stockley's fees. Aycock signed the court's order as the attorney representing David. On November 19, 2008, Melissa Cornell ("Cornell") entered an appearance for David in the State Court Proceeding. One day later, on November 20, 2008, Aycock filed a motion to withdraw on behalf of Hood & Raynolds, which was granted on January 29, 2009. Thus, the firm of Hood & Raynolds, including Aycock, appeared as David's attorneys of record in the State Court Proceeding from May 20, 2007 to January 29, 2009.

On March 11, 2009, Stockley sent a letter to Leslie's counsel, which stated that David informed him of the Recordings and asking whether either party's counsel objected to him reviewing the Recordings. According to Leslie, this is the first time she learned of the Recordings. On May 20, 2009, a hearing was held in the State Court Proceeding, during which counsel for Leslie questioned David about the Recordings. David testified that the Recordings were ultimately "reduced to a VCR format" and that the six VCR tapes containing the recordings were dated August

---

[1] The discovery responses signed by Aycock are dated June 7, 2007.

7, 2004, November 29, 2005, November 30, 2005, November 30, 2005, January 13, 2006, and January 13, 2006. (*See* 5/20/09 Hr'g Tr., Ex. N to Mot. to Disqualify, at 4.)

On September 16, 2009, Aycock left employment at Hood & Raynolds and joined James R. Gotwals and Associates, Inc. ("Gotwals Firm"), a five-person firm specializing in family law and civil litigation. On December 30, 2009, James R. Gotwals ("Gotwals") and Grant T. Lloyd ("Lloyd"), of the Gotwals Firm, first entered an appearance as co-counsel for Leslie in the State Court Proceeding.

On May 19, 2010, Leslie, individually and as next friend of two minor child, filed this lawsuit asserting three causes of action against David, Gary, and Karen: (1) violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-2520; (2) invasion of privacy; and (3) intentional inflection of emotional distress. All causes of action are based upon interception and/or transcription of the Recordings. Leslie is represented in this lawsuit by three members of the Gotwals Firm – Gotwals, Lloyd, and Mary Gutierrez. Aycock has not entered an appearance.

## II. Motion to Disqualify

David filed a Motion to Disqualify the Gotwals Firm pursuant to Oklahoma Rules of Professional Conduct 1.9(a) and 1.10(a), arguing that Aycock's representation of David during the State Court Proceeding disqualifies the Gotwals Firm from representing Leslie in this action.[2]

---

[2] David has not, to the Court's knowledge, sought disqualification of the Gotwals Firm in the State Court Proceeding.

### A. General Standard Governing Motions to Disqualify

Control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge and is a matter of judicial discretion. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373, 1383 (10th Cir. 1994). In exercising its discretion and determining whether to grant a motion to disqualify, federal courts must look to "two sources of authority." *Id.* "First, attorneys are bound by the local rules of the [federal] court in which they appear." *Id.* As noted by the Tenth Circuit, "[f]ederal district courts usually adopt the Rules of Professional Conduct of the states where they are situated." *Id.* The Northern District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct ("ORPC") as the standard governing attorney conduct. *See* N.D. Okla. LCvR 83.6(b). Therefore, one source of law that the Court must consult is the Oklahoma Rules of Professional Conduct.

"Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Cole*, 43 F.3d at 1383; *see also United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005) (same). Under Tenth Circuit law, "motions to disqualify are governed by the ethical rules announced by the national profession and considered in light of the public interest and the litigants' rights." *Cole*, 43 F.3d at 1383 (quotation omitted). Thus, although federal courts must consult state rules of professional conduct, they are not bound by state-court interpretations of such rules. *See Weeks v. Indep. Sch. Dist. No. I-89 of Okla. Cnty.*, 230 F.3d 1201, 1214 (10th Cir. 2000) (Briscoe, J., concurring) (explaining that neither district court nor Tenth Circuit was bound by Oklahoma Supreme Court's interpretation of ORPC 4.2 because "ethical rules in federal court are subject to a national standard"). Nonetheless, Judge Briscoe advised that "it would arguably create procedural difficulties for practitioners in Oklahoma were we to adopt an interpretation of Rule 4.2 different

5

from that adopted by the Oklahoma Supreme Court." *Id.* Based on these pronouncements, the Court's task is to "apply[] standards developed under federal law," *Cole*, 43 F.3d at 1383, while attempting to avoid any inconsistencies with state law that would "create procedural difficulties for practitioners in Oklahoma," *see Weeks*, 230 F.3d at 1214.

**B.     ORPC 1.9(a) and 1.10(a)**

David asserts that disqualification is warranted based on the conflict of interest rule governing duties to former clients set forth at ORPC 1.9(a):

> Rule 1.9.  Conflict of Interest:  Duties to Former Clients
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9.[3]  David further contends that the conflict of interest is imputed to the Gotwals Firm pursuant to ORPC 1.10(a):

> Rule 1.10.  Imputation of Conflicts of Interest:  General Rule
>
> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.6 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

*Id.* at Ch. 1, App. 3-A, Rule 1.10.[4]

---

[3] ORPC 1.9(a) is identical to the ABA Model Rule of Professional Conduct.  *See* ABA Model Rule of Prof'l Conduct 1.9.  Thus, the Oklahoma rule reflects the national standard.

[4] ORPC 1.10(a) is based on the former ABA Model Rule of Professional Conduct.  On February 16, 2009, the model rule was amended to provide:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so

6

## C. Tenth Circuit Standard

By its language, any ORPC 1.10(a) imputation analysis begins with an analysis of ORPC Rule 1.9. Pursuant to Tenth Circuit law, a party seeking to disqualify opposing counsel pursuant to ORPC 1.9(a) must establish that "'(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant.'" *Stiger*, 43 F.3d at 1383 (quoting *Cole*, 43 F.3d at 1383). If the movant establishes the first two prongs, "an irrebuttable 'presumption arises that a client has indeed revealed facts to the attorney that require his disqualification.'" *Id.* (quoting *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985)). This

---

by Rules 1.7 or 1.9, unless . . .
(2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and
(I) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
(ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and
(iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

Model Rules of Prof'l Conduct R. 1.10, cited in ABA House of Delegates, Resolution 109 (February 16, 2009); *see Southwire Co. v. Ramallo Bros. Printing, Inc.*, No. 03-1100, 2010 WL 446593, at *1 (D.P.R. Feb. 1, 2010) (explaining that Model Rule 1.10(a) was amended "to explicitly allow the use of screening procedures to avoid the imputation of conflicts of interest in the private-firm context"). Thus, the Oklahoma rule arguably conflicts with the current "national standard."

irrebuttable presumption under Tenth Circuit law is consistent with the Comment to the most recent version of ORPC 1.9, which took effect January 1, 2008:

> A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt. Thus, David need not come forward with evidence of the actual confidential information that was revealed to Aycock. Instead, the Court may conclude that Aycock has confidential information to use in this matter if David demonstrates that (1) an actual attorney-client relationship existed; and (2) this case involves a matter that is "substantially related" to the State Court Proceeding.[5]

### D. ORPC 1.9(a) Analysis

Despite Leslie's attempt to minimize the role played by Aycock, there is no question that David and Aycock had an attorney/client relationship. Aycock entered an appearance, signed pleadings, and attended hearings on David's behalf. The evidence belies Leslie's assertion that Aycock played a small role in the State Court Proceeding compared to more senior members of the Hood & Raynolds firm. Thus, David has satisfied the first prong of showing the existence of a former attorney-client relationship between Aycock and David. Nor is there any real question that the interests of the Gotwals Firm's present client, Leslie, are materially adverse to the movant,

---

[5] This Court has previously rejected the argument that the Oklahoma Supreme Court's decision in *Arkansas Valley State Bank v. Phillips,* 171 P.3d 899 (Okla. 2007), mandates a more stringent evidentiary showing. *See Accounting Principals, Inc. v. Manpower, Inc.*, 599 F. Supp. 2d 1287, 1293-95 (N.D. Okla. 2008). For the same reasons set forth in that opinion, the Court rejects any contention by Leslie that David must disclose the precise nature of the confidential information disclosed to Aycock.

David. The dispute as to ORPC 1.9(a) is whether David can satisfy the second prong, which requires a showing that "the present litigation involves a matter that is 'substantially related' to the subject of [David's] prior representation" by Aycock. *Stiger*, 43 F.3d at 1383.

The Comment to ORPC 1.9(a), which is identical to that contained in the model rule, provides significant guidance in determining when two "matters" are "substantially related":

> The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree. When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests in that transaction clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.
>
> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute *or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter.* For example, a lawyer who has represented a businessperson and learned extensive private financial information about that person may not then represent that person's spouse in seeking a divorce. Similarly, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent. Information that has been disclosed to the public or to other parties adverse to the former client ordinarily will not be disqualifying. Information acquired in a prior representation may have been rendered obsolete by the passage of time, a circumstance that may be relevant in determining whether two representations are substantially related. *In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation.* A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the

9

> lawyer has confidential information to use in the subsequent matter. A conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services.

Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt. (emphasis added); *see also* ABA Model Rule of Prof'l Conduct 1.9, Cmt. (identical). Consistent with this Comment, the Tenth Circuit "look[s] to whether the factual contexts of the two representations are similar or related." *Stiger*, 413 F.3d at 1196 (quotations omitted); *see Cole*, 43 F.3d at 1384 (same). According to the Tenth Circuit, "[t]he underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question." *Stiger*, 413 F.3d at 1384.

Based on guidance in the comments, the Court concludes that the State Court Proceeding and this federal lawsuit are substantially related. Leslie contends that the Recordings only became relevant in the State Court Proceeding after Aycock and Hood & Raynolds were replaced by Cornell as David's counsel. Even assuming this is true, it is not dispositive. Attorneys and clients reveal many confidences regarding litigation topics before they become "relevant" in the actual proceeding. Often, such confidences are revealed in hopes that they never become relevant in the proceeding. This does not render the information shared by the client with his counsel any less "confidential" or any less damaging in a subsequent proceeding regarding that same topic.

In this case, David contends (and Aycock has not denied) that David informed Aycock of the Recordings' existence, received advice from Aycock regarding the Recordings, and delivered the Recordings to Hood & Raynolds' office. The specifics of whether, how, when, and under what circumstances David caused the Recordings and transcripts to be made are essential questions of fact in this case. *See generally Glazner v. Glazner*, 347 F.3d 1212, 1214 (11th Cir. 2003) (explaining

that Title III prohibits "non-consensual recordings of private conversations, subject to certain specified exceptions, and authorize[s] civil remedies on behalf of those who suffer violations of the statutory provisions."). The Court finds sufficient evidence to conclude that Aycock, as David's counsel during the State Court Proceeding, obtained confidential information concerning the Recordings and transcripts that could potentially assist the Gotwals Firm in prosecuting the claims against David in this case.[6] In other words, there "is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.9, Cmt. (emphasis added). Further, David's feeling that Aycock "switched sides" is arguably justified based on the evidence presented in support of the Motion to Disqualify. Therefore, Rule 1.9(a) prevents Aycock from representing David in the current litigation.[7]

E.   ORPC 1.10(a) Analysis

Aycock is not counsel of record in this case. Thus, the next question is whether Aycock's disqualification is imputed to the Gotwals Firm pursuant to ORPC 1.10(a). As explained *supra* note 4, the Oklahoma rule and model rule appear to be in conflict. The Court need not resolve this conflict because the Gotwals Firm is disqualified under either the Oklahoma or national version.

---

[6] As explained above, David further contends that the Recordings were the subject of discovery responses signed by Aycock on June 7, 2007, which made the Recordings available for inspection by Leslie's counsel. (*See* David Supp. Aff., Ex. D to Mot. to Disqualify, at ¶¶ 10-14 and attached discovery requests.) In response to a request to produce copies of "all recordings include video, audio, and the like that depict, contain, or in any way relate to [Leslie]," David responded by stating that "[t]his information is available for inspection at the office of [Aycock]." (*See id.*) The Court need not determine, as a factual matter, whether the responses referred to the Recordings because other evidence is sufficient to reach a finding of substantial relatedness.

[7] To be clear, Aycock has not engaged in any improper conduct simply by changing law firms, and nothing in this Order should be so construed.

11

Under the Oklahoma version of Rule 1.10(a), Aycock's conflict is imputed to his entire firm *unless* the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm. The Gotwals Firm has made no attempt to show that Aycock's disqualification is based on any "personal interest," such as Aycock's political beliefs, rather than interests of client loyalty and protection of confidential information. *See* Okla. Stat. tit. 5, Ch. 1, App. 3-A, Rule 1.10, Cmt. ("The rule in paragraph (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented. Where one lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified."). Thus, ORPC 1.10(a) imputes Aycock's conflict to the Gotwals Firm.

Under the model version of Rule 1.10(a), if the conflict was created at an attorney's prior firm, the disqualified attorney's new firm may nonetheless represent the client if three conditions are met:

> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;
> (ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and
> (iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

Model Rules of Prof'l Conduct R. 1.10(a). In this case, Leslie contends that, out of an abundance of caution, the Gotwals Firm screened Aycock from all aspects of this litigation because it was aware of the potential conflict created by his former representation of David. Assuming that such screening occurred, the Gotwals Firm has made no attempt to show that it complied with the second and third requirements of providing written notice to David and certain certifications of compliance.[8]

Finally, the Gotwals Firm argues that David somehow waived his ability to assert a conflict in this case because he did not object to the Gotwals Firm's entry of appearance in the State Court Proceedings on December 30, 2009. This waiver argument is not consistent with law or the professional rules and would place an undue burden on former clients to know every member of a law firm upon that firm's entry of appearance in a case. Clearly, even under the more lenient revised model rule, the onus is on the party with the disqualified attorney to provide written notice of that attorney's employment with the firm and notice of its compliance with screening procedures. Therefore, the Gotwals Firm is disqualified under the Oklahoma and model version of Rule 1.10(a), and the Court rejects Leslie's "waiver" argument.

---

[8] Leslie did not cite or rely upon the model rule but instead generally argued that its screening of Aycock prevented disqualification under ORPC 1.10(a), which explains why Leslie did not address the other two requirements.

### III. Conclusion

Plaintiff's Motion to Disqualify Counsel (Doc. 18) is GRANTED. Leslie shall cause an entry of appearance to be entered by new counsel no later than Monday, May 23, 2011. If no substitute counsel has entered an appearance by the required date, this matter will be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**SO ORDERED THIS 2nd day of May, 2011.**

_____
**TERENCE C. KERN
UNITED STATES DISTRICT JUDGE**