**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| CARLA LESLIE, individually & as mother and next friend of the Minor Children, C.I.F. and N.R.F., | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 10-CV-320-TCK-TLW<br>) |
| DAVID D. FIELDEN, GARY W. FIELDEN, and KAREN R. FIELDEN, | )<br>)<br>) |
| Defendants. | ) |

## OPINION AND ORDER

Before the Court are Defendant Karen Fielden's Motion to Dismiss (Doc. 11) and Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 13).

**I.  Factual Background**

Plaintiff Carla Leslie ("Leslie"), individually and as mother and next friend of two minor children, alleges that Defendant David Fielden ("David") and his father Gary Fielden ("Gary") "set up a recording device in the living room of the parties' marital residence, intercepted and recorded at least 29 hours totaling more than 6 tapes of [Leslie and the children's] life along with interaction with other parties, (including, but not limited to, one side of various telephone conversations)." (Compl. ¶ 7.)[1] David's mother, Karen Fielden ("Karen") allegedly "transcribed some of the videos." (*Id.* ¶ 11.) This is the only allegation in the Complaint regarding Karen's conduct. Leslie asserted three causes of action against David, Gary, and Karen: (1) violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520 ("Title III"); (2) invasion of

---

[1] Leslie and David were married when the recordings were made, but David subsequently filed for divorce.

privacy; and (3) intentional infliction of emotional distress ("IIED") (collectively "state law torts"). Karen moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), arguing (1) all claims are barred by the statute of limitations, and (2) Karen's only action alleged in the Complaint – namely, transcribing the videos – does not constitute a violation of Title III or satisfy the elements of the two alleged torts.

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to

2

be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

## III.    Statutes of Limitations

Civil actions arising under Title III "may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520(e). The Oklahoma torts of invasion of privacy and IIED are also subject to a two-year statute of limitations. Okla. Stat. tit. 12, § 95(3). Under Oklahoma law, "the 'discovery rule' allows statutes of limitations in tort cases to be tolled until the injured party knows or, in the exercise of reasonable diligence, should have known of the injury." *In re Cooper Mfg. Corp.*, 131 F. Supp. 2d 1230, 1237 (N.D. Okla. 2001). Thus, all relevant statutes of limitation are subject to a discovery rule.

Neither the Title III claim nor the state law torts are subject to dismissal based on the statutes of limitations. Karen contends that "Karen transcribed such communications for use by David in the divorce proceedings" and that Leslie has "known about Karen's involvement since the divorce proceedings which began in 2005 and continued in 2006." (Mot. to Dismiss 3.) This argument is based entirely on a mischaracterization of the Complaint. The Complaint does not allege that Karen transcribed the recordings for purposes of the divorce proceedings or explain for what purpose they

3

were transcribed. Nor do any allegations in the Complaint state, imply, or otherwise indicate that Leslie discovered or should have reasonably discovered that Karen transcribed the recordings at a point in time prior to May 19, 2008 (two years before the Complaint was filed). In short, nothing in the Complaint eliminates the possibility that Leslie discovered the existence and/or Karen's transcription of the recordings at a point in time that would render her claims timely filed. Accordingly, Leslie's claims are not subject to dismissal based on expiration of the relevant statute of limitations.

## IV. Title III

In general, Title III prohibits "non-consensual recordings of private conversations, subject to certain specified exceptions, and authorize[s] civil remedies on behalf of those who suffer violations of the statutory provisions." *Glazner v. Glazner*, 347 F.3d 1212, 1214 (11th Cir. 2003). Relevant to Karen's alleged conduct, Title III creates civil liability for any person who "intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]" 18 U.S.C. § 2511(d). Karen argues that the allegations in the Complaint, accepted as true, do not constitute intentional "use" of the recordings.

Construed in its most favorable light, the Complaint alleges that Karen watched and/or listened to the video recordings and transcribed their contents. The issue presented by the parties' briefs is whether this conduct constitutes "use" in violation of 18 U.S.C. § 2511(d). District courts within this circuit are split as to whether merely listening to an intercepted recording constitutes use. *Compare Thompson v. Dulaney*, 838 F. Supp. 1535 (D. Utah 1993) ("The Court thinks it strains

4

logic to conclude that reading a document or listening to a tape does not amount to 'use' of those items.") with *Fields v. Atchison, Topeka, and Santa Fe Rwy. Co.*, 985 F. Supp. 1308, 1314 (D. Kan. 1997) (rejecting reasoning of *Thompson* and holding that "the conduct of listening does not fall within the definition of 'use'"), withdrawn in part on other grounds by *Fields v. Atchison, Topeka, and Santa Fe Rwy. Co.*, 5 F. Supp. 2d 1160 (D. Kan. 1998). The Sixth Circuit has held that listening alone is insufficient to impose liability for using illegally intercepted communications because "[u]sing is best understood as active, while listening is passive." *Dorris v. Absher*, 179 F.3d 420, 426 (6th Cir. 1999); *see also Peavy v. Harman*, 37 F. Supp. 2d 495, 513-14 (N.D. Tex. 1999) (defining "use" under Title III as "connot[ing] active employment of the contents of the illegally intercepted communication for some purpose") (holding that the defendants "used" intercepted recordings by analyzing and compiling relevant portions to be transcribed for purposes of an investigation).[2]

The Court need not resolve this question because the alleged conduct in this case goes beyond passive listening and includes the act of transcription. The Court finds that the alleged act of transcribing constitutes "use" of such recordings, even assuming the Tenth Circuit would require some action beyond merely listening. The principal case relied upon by Leslie, *Dorris v. Absher*, 179 F.3d 420 (6th Cir. 1999), is factually distinguishable. In *Dorris*, an individual verbally composed a letter based on intercepted communications, and his wife dictated such letter for him. In discussing the wife's Title III liability, the court stated:

> There is no doubt that an individual who composes a letter based on intercepted communications would be 'using' those communications. In this case, however, the

---

[2] This particular holding was affirmed on appeal in *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 174 (5th Cir. 2000), although other aspects of the district court's decision were reversed.

5

> record reveals that it was [the husband] who composed the letters, and that [the wife] did nothing more than take dictation from him. We conclude that transcribing a letter that someone else composed from information based on illegally intercepted communications is too indirect to be considered a further 'use' of those communications. [The wife's] role was exclusively mechanical. Although [the husband] surely 'used' the illegally intercepted communications, [the wife] did not.

*Id.* at 426. Unlike the wife in *Dorris*, Karen's involvement with the recordings was not "indirect." She allegedly listened to and/or watched the recordings and transcribed them, presumably for further use by her or others. Therefore, the Title III claim against Karen is not subject to dismissal based on a failure to allege "use" within the meaning of 18 U.S.C. § 2511(d).

## V. State Law Torts

Leslie alleges that Karen transcribed video recordings taken without Leslie's consent, (*see* Compl. ¶ 11), and that Karen acted "maliciously, wantonly, willfully, and in bad faith with reckless disregard" for Leslie's rights, (*see id.* ¶ 13). Karen argues that these factual allegations do not state a claim for invasion of privacy or IIED.

Oklahoma case law, adopting the Restatement (Second) of Torts, § 652A (1977), recognizes the tort of invasion of privacy as falling into four categories: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public. *McCormack v. Okla. Pub. Co.*, 613 P.2d 737, 740 (1980); *Brill v. Walt Disney Co.*, 246 P.3d 1099, 1102 (Okla. Civ. App. 2010). In cases such as this involving the first category, a plaintiff must show: (1) the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion of the plaintiff or his private affairs or concerns, and (2) the intrusion would be highly offensive to a reasonable person. *Munley v. ISC Fin. House, Inc.*, 584 P.2d 1336, 1339 (Okla. 1978) (adopting Restatement (Second) of Torts, § 652B)).

In order to succeed on a claim of IIED, a plaintiff must show: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer emotional distress; and (4) the plaintiff's emotional distress was severe. *Daemi v. Church's Fried Chicken, Inc.,* 931 F.2d 1379, 1387 (10th Cir. 1991). To satisfy the extreme and outrageous element, a plaintiff must prove the defendant's conduct was so extreme and outrageous as to be beyond all possible bounds of decency. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986) ("Conduct which, though unreasonable, is neither beyond all possible bounds of decency in the setting in which it occurred, nor is one that can be regarded as utterly intolerable in a civilized community, falls short of having actionable quality.") (quotations omitted). Oklahoma law directs the district court to act as a gatekeeper and make an initial determination about the validity of a claim before sending it to the jury. *Breeden v. League Servs. Corp.*, 575 P.2d 1374, 1377-78 (Okla. 1978) ("The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded so extreme and outrageous as to permit recovery . . . .").

With respect to both torts – invasion of privacy and IIED – the Oklahoma Supreme Court has explained that such torts are reserved for extreme conduct:

> The torts of intentional infliction of mental distress and invasion of privacy are part of a modern development in the law to afford some redress to plaintiffs who have suffered from certain previously non-actionable forms of anti-social behavior. Inherent in the development of these new forms of action is an attempt to strike a medium between some of the merely unpleasant aspects of human interpersonal relationships on the one hand and clearly unacceptable conduct on the other. There is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual. If recovery for damage done is to be afforded at all, there must be some test by which to weed out those suits premised on mere discord between individuals while preserving those where the conduct of individuals involved has clearly exceeded tolerable bounds of social deportment.

*Munley*, 584 P.2d at 1338.

The Court concludes that Karen's alleged conduct – which consists of transcribing and presumably watching surreptitious recordings taken by her husband and son – is not the type of outrageous and/or highly offensive conduct intended to be redressed by the above torts. In completing the alleged actions, Karen never came into contact with Leslie and never directed any conduct toward Leslie. She merely observed videos outside the presence of Leslie after they had been recorded and then transcribed them. Further, the recording device was placed in the living room, indicating that most footage watched by Karen was of a less private nature than had the camera been placed in a bedroom or bathroom. Based on these facts, Karen's behavior of watching and transcribing the videos is not the type of intrusion that would be regarded as highly offensive to a reasonable person or the type of intentional conduct that is beyond the bounds of human decency. Therefore, Leslie's allegations against Karen fail to state a plausible claim for relief for the state law torts.[3]

---

[3] Neither party cited any factually analogous cases in support of their respective positions. Based on the Court's research, successful claims for invasion of privacy and/or IIED based on surveillance of the plaintiff typically involve extreme conduct during or in addition to the surveillance. *See Wolfson v. Lewis*, 924 F. Supp. 1413, 1432 (E.D. Pa. 1996) (holding that plaintiffs had likelihood of success on invasion of privacy claim where reporters intruded upon the solitude and seclusion of a family by recording them from a boat outside their home and otherwise "engaging in a course of conduct apparently designed to hound, harass, intimidate and frighten them") ("The intrusions committed . . . consisted of a pattern of conduct involving physical and sensory invasions into [the plaintiffs'] privacy" and deprived them "of the right to live their life quietly and peacefully."); *Tompkins v. Cyr*, 202 F.3d 770, 783 (5th Cir. 2000) (affirming damages award in case involving surveillance and claims for IIED and invasion of privacy where family of doctor providing abortions "faced frequent picketing of their respective offices and home and of their neighborhood, were followed and chased in their car, were challenged by demonstrators in a restaurant, were confronted in their church by a demonstrator, had people staked out behind their home surveilling their private activities, had their property trespassed, had crosses placed in their yard, received a barrage of phone calls and mail, and also received several anonymous death threats").

### VI. Motion to Amend

Leslie requested that, in the event any of her claims against Karen were subject to dismissal, that she be allowed to amend her Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). Rule 15(a)(2) instructs a court to freely give leave to amend when justice so requires. However, Leslie has failed to explain how amending her Complaint could save the state law tort claims. Specifically, Leslie has not given any indication that there exist additional, unpled facts that would contribute to the outrageousness or offensiveness of Karen's alleged conduct. The Court therefore finds that permitting amendment of such claims is not necessary to further the interest of justice. Further, amendment is not necessary as to the Title III claim because such claim states a claim for relief as pled. Leslie's motion to amend is accordingly denied.

### VII. Conclusion

Defendant Karen Fielden's Motion to Dismiss (Doc. 11) is DENIED in part and GRANTED in part. It is DENIED as to Title III and GRANTED as to the claims for invasion of privacy and IIED. Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 13) is DENIED.

**SO ORDERED this 8th day of September, 2011.**

_____
**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**